IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 23-CR-277 (CKK) |
| | : | |
| v. | : | 18 U.S.C. § 111(a)(1) |
| | : | |
| CHRISTOPHER BRIAN ROE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Christopher Brian Roe, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.     At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.     The defendant, Christopher Brian Roe, lives in Raytown, Missouri. On January 6, 2021, Roe attended the "Stop the Steal" rally, which occurred in front of the White House and on the National Mall. At the rally, the defendant had a pitchfork with pointed-metal tips wedged into

the ground and wore a backpack with a roll of duct tape attached. The defendant then proceeded to the United States Capitol and arrived at the West Plaza at approximately 1:25 p.m.

9.      Upon his arrival, the defendant held the pitchfork in his right hand as he approached a line of police officers guarding the Capitol. After reaching the line, the defendant attempted to remove one of the bicycle racks located between the officers and the crowd of rioters. When the officers resisted, the defendant fell backwards and dropped the pitchfork. At approximately 1:26 p.m., after the defendant picked the pitchfork back up from the ground, another rioter physically engaged with USCP Officer R.E. The defendant then moved towards the pair and pushed against USCP Officer R.E. several times with his left arm while holding the pitchfork in his right hand. Other officers deployed chemical irritant against the defendant and the rioter, which caused the defendant to retreat into the crowd.

10.     At approximately 2:38 p.m., the defendant entered the Capitol Building from the Upper West Terrace. Once inside, the defendant continued through the Rotunda and into a hallway located outside of the chamber of the House of Representatives.

11.     At approximately 2:55 p.m., officers with the Metropolitan Police Department ("MPD") attempted to remove the defendant and other rioters from the House wing of the Capitol. To accomplish this objective, MPD Officer R.D. pushed the defendant towards an exit with his baton. The defendant reacted by grabbing onto a nearby magnetometer to prevent the officer from moving him forward. The defendant then turned towards the officer and said, "you are protecting traitors and treasonists. They committed treason. And you shot one of us. That's bullshit. Put your baton down and f***ing join us."

12.     A minute later, an altercation broke out between officers and some of the rioters. In response, the defendant moved towards Officer R.D., wrapped his arm around the officer's baton,

and pushed the officer several feet backwards. Officers eventually ejected the defendant from this area at approximately 2:57 p.m. Security footage from this time frame shows a bag of zip ties inside the defendant's backpack.

13.     From this exit, the defendant walked around the east front of the Capitol and reentered the building through the Columbus Doors at 3:21 p.m. Once inside, the defendant turned back towards the crowd behind him and waved other rioters into the building. The defendant briefly entered the Rotunda before officers removed him back into the lobby before the Columbus Doors. While in this lobby, at approximately 3:25 p.m., the defendant turned his left shoulder towards a USCP officer and pushed into the officer several times. At approximately 3:30 p.m., law enforcement pushed the defendant out of the Capitol Building.

14.     Afterwards, the defendant moved around to the north side of the Capitol. At this location, the defendant obtained a bicycle rack and slammed it several times against a set of wooden doors leading into the Capitol Building.

### *Elements of the Offense*

15.     Count One: The parties agree that 18 U.S.C. § 111(a)(1) requires the following elements:

a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer R.E., an officer from the United States Capitol Police.

b.  Second, the defendant did such acts forcibly.

c.  Third, the defendant did such acts voluntarily and intentionally.

d.  Fourth, Officer R.E. was an officer or employee of the United States who was then engaged in the performance of his official duties.

e. Fifth, the defendant made physical contact with Officer R.E. or acted with the intent to commit along felony. For the purposes of this element, "another felony" refers to the offense charged in Count Two, in violation of 18 U.S.C. § 231(a)(3).

16. Count Three: The parties agree that 18 U.S.C. § 111(a)(1) requires the following elements:

a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer R.D., an officer from the Metropolitan Police Department.

b. Second, the defendant did such acts forcibly.

c. Third, the defendant did such acts voluntarily and intentionally.

d. Fourth, Officer R.D. was assisting officers of the United States who were then engaged in the performance of their official duties.

e. Fifth, the defendant made physical contact with Officer R.D. or acted with the intent to commit along felony. For the purposes of this element, "another felony" refers to the offense charged in Count Four, in violation of 18 U.S.C. § 231(a)(3).

17. Count Five: The parties agree that 18 U.S.C. § 111(a)(1) requires the following elements:

a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the United States Capitol Police.

b. Second, the defendant did such acts forcibly.

c. Third, the defendant did such acts voluntarily and intentionally.

d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or employee of the United States who was then engaged in the performance of his official duties.

e. Fifth, the defendant made physical contact with that officer or acted with the intent to commit along felony. For the purposes of this element, "another felony" refers to the offense charged in Count Six, in violation of 18 U.S.C. § 231(a)(3).

### Defendant's Acknowledgments

18.    The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that, as to each Count, he assaulted the listed law enforcement officer, the assaults each involved physical contact, and he acted with the intent to commit another felony.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Andrew Haag
ANDREW S. HAAG
Assistant United States Attorney
MA Bar No. 705425
601 D Street, N.W.
Washington, DC 20530
(202) 252-7755
Andrew.Haag@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Christopher Brian Roe, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10-24-23

Christopher Brian Roe
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10.24.23

Stephen C. Moss
Attorney for Defendant